# IN THE SUPREME COURT OF TEXAS

═══════════

No. 20-0075

═══════════

IN RE USAA GENERAL INDEMNITY COMPANY, RELATOR

═══════════

ON PETITION FOR WRIT OF MANDAMUS

═══════════

JUSTICE BLAND, joined by JUSTICE LEHRMANN, dissenting.

The salient question presented in this case is whether the motorist who injured the plaintiff was underinsured. The answer is simple: she was not.

The trial court's post-verdict dismissal of the at-fault motorist does not set aside the jury's verdict establishing her liability and the amount of the damages she caused for purposes of determining whether she was underinsured. Nor does it remove from consideration her agreement to pay the plaintiff an amount that exceeds the jury's verdict. Fundamentally, the plaintiff's own insurer has no underinsured-motorist liability in this case because the liable motorist and her insurance carrier fully compensated the plaintiff for his injuries, as determined by the jury that heard his case against her. The plaintiff's receipt of payment for the damages found by the jury from the at-fault motorist and his agreement to dismiss with prejudice his claim against that motorist precludes his claim against his own carrier for underinsured-motorist coverage.

In rejecting this basic tenet, the Court ignores that USAA is one of three parties to this *single* action. Likewise, its focus on the plaintiff's dismissal and the timing of the plaintiff's insurer's consent to be bound by the verdict neglects both the verdict's force and effect and the binding nature of the plaintiff's dismissal. As a party to the lawsuit, the plaintiff's insurer may

seek judgment on the jury's verdict. Absent any question of the verdict's infirmity, the trial court's decision to disregard it in favor of another trial warrants mandamus relief. Because the Court declines to grant relief, I respectfully dissent.

## I

Sue Ann Baldor rear-ended Adam Reising in a car accident. Reising sued Baldor. Because Baldor's insurance coverage initially was limited to $30,000, and Reising alleged more than $30,000 in damages, Reising also sued his own insurer, USAA General Indemnity Company, seeking coverage under his underinsured-motorist policy for any covered amount that Baldor did not pay.

Reising's underinsured-motorist coverage applies when the coverage of the motorist-defendant "is not enough to pay the full amount the covered person is entitled to recover as damages." The policy further provides that the coverage is for damages reduced by payments made on behalf of the underinsured motorist: "[a]ny amount otherwise payable for damages under UM/UIM Coverage shall be reduced by all sums paid or payable" by or on behalf of the person legally responsible for those damages. Finally, "[a]ny judgment of damages arising out of a suit brought without [USAA's] written consent is not binding on [USAA]."

Baldor moved to bifurcate the trial and abate the case against USAA, and the trial court granted her motion. Reising and Baldor proceeded to trial. The jury found Baldor 100% responsible for the accident and awarded Reising $160,000 in damages.

Neither Reising nor Baldor challenged the verdict by, for example, moving for a new trial or to set the verdict aside. Instead, Reising and Baldor agreed to settle their suit for $161,114.79. They then moved in the trial court to dismiss Reising's claim against Baldor with prejudice. At a hearing on the motion and settlement, USAA moved for judgment on the verdict, which, it argued,

2

is dispositive of its liability given Baldor's payment. The trial court refused to act on USAA's motion. The trial court then granted Reising's motion to dismiss his claim against Baldor with prejudice.

After the trial court dismissed Baldor from the suit with prejudice, USAA wrote to Reising that it would be bound by the verdict. USAA again moved for judgment on the verdict. Without explanation, the court refused and scheduled a second trial, in which Reising contends that he may retry his claim against Baldor and submit her liability and his damages to another jury, solely for the purpose of determining USAA's liability for underinsured-motorist coverage.

## II

For over a century, we have consistently held that a judge has a ministerial duty to enter judgment on a verdict.[1] Under Texas Rule of Civil Procedure 300, the trial court "shall render judgment" on a special verdict,[2] unless the verdict is "set aside or a new trial is granted, or judgment is rendered notwithstanding verdict or jury finding."[3]

A trial court has "considerable discretion" to set aside a verdict and grant a new trial, for example, in cases of a conflicting verdict or juror misconduct.[4] However, a trial court must state its reasons—failing to do so is an abuse of discretion that warrants mandamus relief.[5]

---

[1] *Hume v. Schintz*, 36 S.W. 429, 430 (Tex. 1896) (orig. proceeding) ("The jury are the judges—the triors— of questions of fact. Their award, until set aside, is conclusive, and it has been held by this court that it is the imperative duty of the court, in the first instance, to give judgment in accordance with the verdict."); *see also Traywick v. Goodrich*, 364 S.W.2d 190, 191 (Tex. 1963) (orig. proceeding) ("Where there is no irreconcilable conflict in the jury's findings it is the ministerial duty of the Judge to enter a judgment on the verdict and the matter involves no judicial or discretionary powers." (citing *Gulf, C. & S. F. Ry. Co. v. Canty*, 285 S.W. 296, 299 (Tex. 1926) (orig. proceeding) (collecting cases))).

[2] "A special verdict is one wherein the jury finds the facts only on issues made up and submitted to them under the direction of the court." TEX. R. CIV. P. 290.

[3] TEX. R. CIV. P. 300.

[4] *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 211 (Tex. 2009) (orig. proceeding) (citing TEX. R. CIV. P. 320, 326, 327).

[5] *See id.* at 213 (holding that trial court's order for a new trial without justification was "arbitrary and an abuse of discretion").

3

The trial court in this case did not state a reason to justify its disregard of the jury's verdict, and on this record, no justification exists. When Reising dismissed Baldor from this suit, it did not dissolve the verdict. Rather, Reising exchanged his right to enforce the verdict against Baldor for the settlement amount that she and her insurer paid.

Reising's dismissal with prejudice of his claim against Baldor does not dispense with USAA's right to seek judgment on the jury's verdict. "Any party may prepare and submit a proposed judgment to the court for signature."[6] Abated or not, bifurcated or not, USAA is a party to the case. If USAA's proposed judgment conformed to the verdict, and the trial court had no reason to set the verdict aside, then the trial court had no option but to enter judgment.

**A**

USAA's proposed judgment conformed to the verdict. Underinsured-motorist coverage compensates the insured for damages that he does not recover from the negligent driver or her insurance company.[7] Under Reising's policy, Reising may recover from USAA only the amount that he is "legally entitled" to recover from Baldor, less any payments Baldor made to satisfy her obligation. The jury awarded Reising $160,000. Baldor's insurer thereafter paid Reising $161,114.79. USAA's obligation to Reising, reduced by Baldor's payment, is zero.

Reising is not "legally entitled" to recover any more from Baldor. Reising's argument against simple arithmetic is that his agreement to dismiss Baldor effectively voids the verdict and leaves undetermined the amount he is "legally entitled" to recover from her. By agreeing to dismiss his claim against Baldor with prejudice, however, Reising is no longer "legally entitled" to pursue

---

[6] TEX. R. CIV. P. 305.

[7] *See* TEX. INS. CODE § 1952.106.

4

Baldor for *any amount*. He has released his claim against her after receiving an amount that exceeded the damages the jury awarded to him.[8]

To the extent that a judgment must fix the amount to which an insured is "legally entitled,"[9] the trial court must render that judgment in this case based on the jury's findings and the applicable law. The jury's verdict coupled with Reising's dismissal of his claim against Baldor *with prejudice* in exchange for an amount greater than the jury's verdict satisfies the requirement without need for further factfinding. In an attempt to avoid this rule, Reising and Baldor "asked the court not to enter a judgment." Their request, however, does not transmute the trial court's dismissal with prejudice of Reising's claim against Baldor into anything other than a binding judgment between them.[10]

By the same token, their agreement does not bind USAA. It left the question of underinsured coverage to be determined, not the damages for which Baldor was responsible. "The order entered at the conclusion of a separate trial is often interlocutory, because no final and appealable judgment can properly be rendered until all of the controlling issues have been tried

---

[8] The Court posits that to permit judgment on the jury's verdict and the resulting partial dismissal would "eviscerate" the contractual right to recover underinsured-motorist benefits because "insureds could never settle." *Ante* at 11 n.27. This ignores that the contractual right to recover benefits is not unfettered. An insured cannot settle with a third party absent the insurance company's consent if that settlement prejudices the insurer—for example, causing it to lose a valuable subrogation right—under the policy's standard settlement-without-consent exclusion. *See Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) (holding that "an insurer may escape [UM/UIM] liability on the basis of a settlement-without-consent exclusion only when the insurer is actually prejudiced by the insured's settlement with the tortfeasor"); *Guar. Cty. Mut. Ins. Co. v. Kline*, 845 S.W.2d 810, 811 (Tex. 1992) (per curiam) ("Texas courts have uniformly upheld the validity of [settlement-without-consent] exclusion[s] in the standard Texas Personal Auto Policy.").

[9] *See Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006) ("Consequently, the insurer's contractual obligation to pay benefits does not arise until liability and damages are determined.").

[10] *See Epps v. Fowler*, 351 S.W.3d 862, 868–69 (Tex. 2011) (recognizing that a "a dismissal or nonsuit with prejudice is 'tantamount to a judgment on the merits.'" (quoting *Dean v. Riser,* 240 F.3d 505, 509 (5th Cir. 2001))).

and decided."[11] In this case, the jury has decided the controlling fact issue. The verdict establishing Baldor's liability and damages cannot conflict with a later verdict deciding those same issues.

The verdict against Baldor and her insurer's payment of an amount exceeding the verdict to resolve Reising's claim against her admits but one conclusion: USAA has no liability to Reising for underinsured-motorist coverage. No further fact-finding is required, and the trial court should have entered judgment for USAA.

**B**

The law places a premium upon finality and conserving judicial resources. "[E]xtraordinary relief can be warranted when a trial court subjects taxpayers, defendants, and all of the state's district courts to meaningless proceedings and trials."[12] For that reason, we have concluded that a trial court abuses its discretion in granting a motion for new trial when the record does not support the trial court's reasons for granting it or when the trial court states no reason.[13] In this case, no party sought to set aside the verdict; one party—USAA—sought judgment on it. The trial court's refusal to enter judgment, combined with an ensuing wasteful second jury trial to decide the same issues a jury in this case has decided, warrants mandamus relief.

**III**

The Court declines to grant relief for two reasons: (1) collateral estoppel does not attach in the absence of final judgment; and (2) USAA's consent to the verdict does not bind Reising. We agree that collateral-estoppel principles are out of place in a bifurcated trial, which does not create separate actions. It is precisely because this case is a single action that USAA is entitled to

---

[11] *Hall v. City of Austin*, 450 S.W.2d 836, 838 (Tex. 1970) (per curiam).

[12] *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding).

[13] *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 211–13 (Tex. 2009) (orig. proceeding).

judgment on the verdict. The second reason fails because the verdict, subsequent settlement, and dismissal with prejudice bind Reising. USAA's contractual shield of consent cannot be used as a sword against it to countermand that verdict and settlement.

## A

USAA's brief characterizes the preclusive effect of the verdict against Baldor as "collateral estoppel." As the Court correctly observes, however, collateral estoppel requires a valid and final judgment.[14] Collateral estoppel is the correct doctrine for measuring claim preclusion in successive lawsuits, but it is inapplicable to the effect of a partial verdict *in the same action*. The trial court entered an order bifurcating and abating—not dismissing or severing[15]—Reising's claim for underinsured-motorist benefits against USAA from his negligence claim against Baldor. To bifurcate means "[t]o separate into two parts."[16] Abatement is "[t]he suspension or defeat of a pending action for a reason unrelated to the merits of the claim."[17]

The Court is adamant that the trial court did not order a bifurcated trial, despite the trial court's order, which expressly states that Reising's cause of action against USAA is "hereby abated and bifurcated."[18] The Court improperly constrains bifurcated trials to those that involve a single

---

[14] *See Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994) ("A party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.").

[15] *Severance*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("*Civil procedure*. The separation, by the court, of multiple parties' claims either to permit separate actions on each claim or to allow certain interlocutory orders to become final.").

[16] *Bifurcate*, BLACK'S LAW DICTIONARY.

[17] *Abatement*, BLACK'S LAW DICTIONARY; *see Tex. Highway Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex. 1967) ("[A] plea in abatement, if sustained, would require an abatement of the claim or cause of action until some obstacle to its further prosecution was removed.").

[18] *See ante* at 12. At the hearing on USAA's amended motion for judgment on the verdict, the trial court also puzzled over the effect of an agreed order signed by only two parties because "this was a bifurcated cause and not a severed cause of action."

jury.[19] Even so, in this case, no more than a single jury was necessary. The hallmark of bifurcation is that the second phase of the trial is dependent on resolution of the first. USAA's liability is dependent on Baldor's liability. USAA remained a party entitled to seek judgment on the verdict.[20] Only severed actions result in independently appealable judgments—judgments that dispose of all claims and all parties.[21]

The jury's verdict resolved the parties' factual dispute about the amount of damages Baldor owed Reising for the collision that she caused. Reising identifies no other fact issue to be resolved in a new trial other than Baldor's liability and damages. To do so again, when Baldor's interests are no longer adversarial to Reising's, risks a skewed outcome like the kind we refused to countenance in *State Farm Fire & Casualty Co. v. Gandy*.[22] The tortfeasor in *Gandy* assigned his claims against his insurer to the plaintiff in exchange for her agreement not to collect her judgment against him.[23] We likened the disincentives that occur when the tortfeasor is no longer aligned with the party responsible for paying the damages for her conduct to the deleterious effects of Mary Carter agreements.[24] As we said then:

> As a matter of public policy, this Court favors settlements, but we do not favor partial settlements that promote rather than discourage further litigation. And we do not favor settlement arrangements that skew the trial process, mislead the jury,

---

[19] *See ante* at 12 n.29. *Bifurcate*, BLACK'S LAW DICTIONARY (explaining that a trial court may bifurcate a case "with or without the same jury hearing both bifurcated parts").

[20] *See* TEX. R. CIV. P. 305.

[21] *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 383 (Tex. 1985) ("In contrast to a severance, separate trials are interlocutory, and are not final and appealable until all the separated claims and issues in the suit have been litigated."). *Van Dyke* involved the unusual instance in which the trial judge ordered a counterclaim *severed* from a claim, conducted the trial in the severed cause, and then rescinded the severance order. *See id.* at 382–83. We said that "the effect of the trial court's rulings was to grant separate trials," but that the resolution of the counterclaim could not be inferred from the verdict on the claim because the court had not submitted it to the jury. *Id.* at 383–85. In contrast, the jury in this case heard and determined Baldor's liability and the damages she caused Reising in the accident.

[22] 925 S.W.2d 696, 705 (Tex. 1996).

[23] *Id.* at 698.

[24] *Id.* at 709–10.

promote unethical collusion among nominal adversaries, and create the likelihood that a less culpable defendant will be hit with the full judgment. The bottom line is that our public policy favoring fair trials outweighs our public policy favoring partial settlements.[25]

As in *Gandy*, the concern is not, as the Court states, that Baldor has an economic incentive to assist Reising in the second trial. It is instead that Baldor has no incentive to *resist* Reising's efforts to establish her liability and damages because she is no longer legally responsible for them. Put differently, though Baldor has no financial interest in Reising's recovery against USAA, she also is not anything more than a "nominal" adversary in what will (again) be a determination of her liability for the car accident and the damages she caused. As we forewarned in *Gandy*: "It is one thing to *say* that a defendant's liability must be determined as if he had not settled with the plaintiff; it is quite another thing to *do* it."[26] In reality, "[o]nce the parties have changed positions, their views are altered, and it is very difficult to determine what might have been."[27]

Our Rules of Civil Procedure provide that a trial court may bifurcate a case for convenience or to avoid prejudice.[28] Here, the trial court did so to avoid injecting potentially prejudicial insurance issues into the negligence suit against Baldor.[29] Whether done for convenience or to avoid prejudice, a separate trial on issues leaves the lawsuit intact, separating the case into two or more parts that are tried separately.[30]

The Court's analysis presumes either that Reising's dismissal bars the trial court from entering judgment on the verdict or that the earlier phase is a legal fiction that evaporated when

---

[25] *Id.* at 710 (quoting *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992)).

[26] *Id.* at 719.

[27] *Id.*

[28] TEX. R. CIV. P. 174(b).

[29] *Ante* at 3.

[30] *Hall v. City of Austin*, 450 S.W.2d 836, 837–38 (Tex. 1970) (per curiam).

9

some of the parties agreed to settle. There is no "earlier" action. There is only a separate verdict in a bifurcated case, which, in turn, incorporates into one final judgment. In a case in which exemplary damages are bifurcated from actual damages, for example, the actual damages verdict informs whether to proceed to the trial on the remaining issue of exemplary damages. Because actual damages are necessary to award exemplary damages, the second phase may not be necessary.[31] The same is true in this case. The first verdict resulted in a finding that established Reising's actual damages. That finding, combined with Reising's receipt of more than the jury's award from Baldor and his subsequent agreement to dismiss his claim against her, precludes underinsured-motorist liability for USAA.

In sum, USAA's agreement to split the trial into phases does not compel it to participate in a second trial that the first has rendered unnecessary.

**B**

While re-litigation happens in underinsured-motorist cases, it comes about when the insurer *declines* to be bound by the findings made against the motorist. In contrast to those cases, the Court in this case holds that the verdict is unenforceable against the very party who sought that verdict to support his claims against two defendants, choosing to settle with only one. None of our precedent leads to such a result; *Gandy* instructs differently.[32]

---

[31] *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex. 1994) ("If the jury answers the punitive damage liability question in the plaintiff's favor, the same jury is then presented evidence relevant only to the amount of punitive damages, and determines the proper amount of punitive damages, considering the totality of the evidence presented at both phases of the trial."), *superseded by statute on other grounds as recognized in U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012); *see also* TEX. CIV. PRAC. & REM. CODE § 41.004(a) (requiring a finding of actual damages to support an award of exemplary damages).

[32] *Gandy*, 925 S.W.2d at 709.

10

The Court further holds that "[a] party's pre-judgment agreed dismissal has the same effect on a verdict against that party as a new trial order—it makes the verdict unenforceable."[33] That may be true for the parties who have agreed to dismiss the claims between them. It is not true for the remaining parties to the case.

Under Rule 162, a plaintiff has the absolute right to take a nonsuit or dismissal without prejudice "[a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence."[34] However, this case proceeded well past Rule 162's point of no return. As we recognized in *O'Brien v. Stanzel*, late-in-the-game nonsuits do not prevent judgments vis-à-vis other parties to the suit:

> One should not be permitted to take a nonsuit so that he can have another day and another try after he has announced ready, picked a jury, and heard and seen all of the witnesses unfold all of the contentions of a three-sided controversy that has proceeded to the point that all parties have closed after a trial that lasted a week. Under such circumstances, one may not prevent a final judgment on the merits by moving for a nonsuit.[35]

---

[33] *Ante* at 10. The two cases the Court cites have nothing to do with dismissals with prejudice or their binding effect. In *In re Columbia Medical Center of Los Colinas*, we observed that the end result of a trial court's decision to set a verdict aside and order a new trial is "that the prevailing party loses the jury verdict." *See* 290 S.W.3d 204, 211–12 (Tex. 2009) (orig. proceeding). We did not hold, however, that an agreed dismissal binds other parties to its effect. A dismissal with prejudice is not like a new trial—the former is a binding judgment enforceable between the parties who made it. A new trial, in contrast, vacates any judgment that has been rendered on the issues to be decided again. The Court's reliance on *Crofts v. Court of Civil Appeals for the Eighth Supreme Judicial District* is equally out of place, as that case involved neither an agreed dismissal, new-trial order, nor a post-verdict dismissal. 362 S.W.2d 101 (Tex. 1962) (orig. proceeding). Instead, *Crofts* held that the court of appeals lacked jurisdiction to issue a writ of mandamus once the trial court had dismissed the case in favor of a related divorce proceeding pending in Maryland. *See id.* at 103–05.

[34] TEX. R. CIV. P. 162.

[35] 603 S.W.2d 826, 828 (Tex. 1980); *accord In re Baker*, 420 S.W.3d 397, 405 (Tex. App.—Texarkana 2014, no pet.) (orig. proceeding) ("[O]btaining a nonsuit without prejudice after a jury has returned its verdict entices a plaintiff to re-file his lawsuit in hopes of securing a jury sympathetic to his position. This practice should be viewed with extreme skepticism, as it tends to undermine the legitimate role of the jury in our system of jurisprudence."). *O'Brien* concerned a dismissal under then-Rule 164, which has since been repealed.

Although *O'Brien* notes that "circumstances may arise which, in a court's discretion, constitute[] grounds for a nonsuit late in a trial," it does not suggest that a post-verdict nonsuit of one party renders the verdict a nullity for a party not included in that nonsuit.[36]

Because the Court holds that the dismissal rendered the verdict a nullity for Reising's claims against USAA, it then analyzes whether USAA's consent resurrects it. In doing so, it improperly uses a clause intended to protect USAA[37] from the vagaries of a sham trial[38] as a bludgeon against USAA's invocation of a verdict that was *not* a sham.

The Court writes that "the insurer can no more bind its insured to the verdict than could the motorist against whom it was rendered."[39] It is not USAA who binds Reising; it was Reising who bound himself. He fully participated in the trial and in the settlement agreement, which bars him from re-adjudicating Baldor's liability for the damages the jury awarded. If Reising did not want to be bound by the verdict, he could have moved for a new trial or for judgment notwithstanding the verdict. Instead, he agreed to dismiss his claim with prejudice after he received payment of an amount exceeding the verdict "by or on behalf of" the party he claims is underinsured. If Baldor's insurer had paid less than the jury's verdict to settle, USAA would have two choices: either move for a judgment on the verdict and pay Reising the difference between the verdict and the amount he recovered from Baldor, or roll the dice and try the case again. Under the former scenario, USAA is required to pay Reising because Reising would not have recovered "all

---

[36] *O'Brien*, 603 S.W.2d at 828.

[37] Reising's policy provides: "Any judgment of damages arising out of a suit brought without our written consent is not binding on us." Consent, in this context, is a one-way street. *See Binding*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("(Of an agreement) having legal force to impose an obligation."). USAA cannot be bound by a judgment arising out of a suit brought without its consent. It nevertheless may accede to the verdict if it chooses. The policy does not say, for example, "Any judgment arising out of a suit brought without our consent is inoperative" or "unenforceable."

[38] *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 712–13 (Tex. 1996).

[39] *Ante* at 2.

amounts that [he] is legally entitled to recover as damages from [Baldor]."[40] Under the latter, USAA has declined to be bound by a judgment from a suit brought without its written consent.[41] The choice is USAA's, not Reising's, because Reising has asserted claims against both defendants based on the same operative facts.

The Court suggests that USAA seeks to improperly rely on Reising's settlement by consenting to the judgment with the benefit of hindsight.[42] That is the very purpose of the consent provision: it allows the insurer to determine *with the benefit of hindsight* whether the potentially underinsured motorist adequately defended the suit before agreeing to be bound by a finding of liability and damages against that motorist. The consent provision protects USAA from default judgments and the lackadaisical efforts of a judgment-proof defendant. USAA used the consent provision here precisely as designed.

\*　　\*　　\*

Because the jury's verdict established that Baldor is liable to Reising for $160,000 in damages, Baldor paid more than that to settle her liability, and Reising dismissed his claim against Baldor with prejudice, USAA is entitled to judgment on the verdict as a party to the suit. Once Reising released his claim against Baldor, he was no longer "legally entitled" to seek damages against her arising out of the accident. His agreement precludes a second trial to again adjudicate Baldor's liability and damages. Mandamus relief is appropriate when a trial court improperly

---

[40] *See* TEX. INS. CODE § 1952.106.

[41] *See supra* note 37.

[42] *See ante* at 9, 11.

refuses to proceed to judgment on a jury's verdict.[43] Because the Court does not grant that relief in this case, I respectfully dissent.

_____
Jane N. Bland
Justice

OPINION DELIVERED: May 7, 2021

---

[43] *See In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 212–13 (Tex. 2009) (orig. proceeding).